W. J. USERY, Jr., Secretary of Labor, United States Department of Labor, Appellee,

v.

MOTHER HUBBARD'S KITCHEN, INC., a corporation, d/b/a Quick Pride Bakery and Quick Shop Markets, Inc., a corporation, Appellants.

No. 76–1605.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 4, 1977.

Decided Feb. 16, 1977.

Richard L. Barnes of Kothe, Nichols & Wolfe, Tulsa, Okl., for appellants.

Tedrick A. Housh, Jr., Kansas City, Mo., and William J. Kilberg, Carin Ann Clauss, Jacob I. Karro and Joseph M. Woodward, Attys., U.S. Dept. of Labor, Washington, D.C., for appellee.

Before HEANEY, ROSS and HENLEY, Circuit Judges.

PER CURIAM.

This is an appeal from the district court's decision holding that certain employees of appellant Mother Hubbard's Kitchen, Inc. (hereinafter "Mother Hubbard's") are not exempt from the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and ordering appellants Mother Hubbard's and Quick Shop Markets, Inc. to pay those employees back minimum and overtime wages. We affirm.

Appellants are two closely held corporations with identical stockholders. The corporations are economically and functionally interrelated. Quick Shop Markets, Inc.

owns and operates approximately one-half of a chain of food stores in the St. Louis area operating under the trade name "Quick Shop." The other stores in the chain are owned and operated by franchisees. Quick Shop Markets, Inc. also owns and operates a bakery which produces bakery products for sale at the Quick Shop stores, and a retail bakery goods outlet from which a small percentage of goods produced at the bakery is sold to the public. The bakery and retail bakery goods outlet are housed in the same building in Fenton, Missouri. Quick Shop Markets, Inc. furnishes the building, supplies, goods, services, equipment and fixtures for the operation of the bakery and retail bakery goods outlet; Mother Hubbard's furnishes the employees to staff both concerns.

The issue presented on appeal is whether the bakery falls within the definition of a retail establishment whose employees are exempted from the requirements of the Fair Labor Standards Act.[1]

The exemption appellants seek to invoke is set out in the following statutory provisions:

§ 213.  *Exemptions*

(a) The provisions of section 206 (except subsection (d) in the case of paragraph (1) of this subsection) and section 207 of this title shall not apply with respect to—

\* \* \* (2) any employee employed by any retail or service establishment . . . if more than 50 per centum of such establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, and such establishment is not in an enterprise described in section 203(s) of this title or such establishment has an annual dollar volume of sales

which is less than $250,000 (exclusive of excise taxes at the retail level which are separately stated). A "retail or service establishment" shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry;[2]

\* \* \* (4) any employee employed by an establishment which qualifies as an exempt retail establishment under clause (2) of this subsection and is recognized as a retail establishment in the particular industry notwithstanding that such establishment makes or processes at the retail establishment the goods that it sells: *Provided,* That more than 85 per centum of such establishment's annual dollar volume of sales of goods so made or processed is made within the State in which the establishment is located; \* \* \*

Appellants contend that, since more than 75% of the bakery's output is sold to the ultimate consumer either at the Fenton retail outlet or at Quick Shops owned by Quick Shop Markets, Inc., and since the bakery is considered a retail establishment by the industry, the bakery qualifies as a retail establishment within the meaning of § 13(a)(2) of the Act, and the exemption set forth in § 13(a)(4) of the Act applies. We disagree.

The term "establishment" as used in the Act has been construed to mean a distinct physical place of business. *A. H. Phillips, Inc. v. Walling,* 324 U.S. 490, 496, 65 S.Ct. 807, 89 L.Ed. 1095 (1945). The courts have long held that a central establishment which produces or stores goods for the benefit of a chain of retail stores is not entitled to exemption from the Act. *A. H.*

1. Section 6(b) of the Act, 29 U.S.C. § 206(b), in essence requires every employer to pay a minimum wage to each employee employed either by an enterprise engaged in commerce or in the production of goods for commerce as defined in § 3(s)(1), (2), or (4) of the Act, 29 U.S.C. § 203(s)(1), (2), or (4), or by an establishment described in § 3(s)(3) or (5) of the Act, 29 U.S.C. § 203(s)(3) or (5). Appellants do not contest the coverage of Mother Hubbard's em-

ployees by the Act if the retail establishment exemption is inapplicable.

2. Effective January 1, 1975 § 13(a)(2) was amended by striking out $250,000 and inserting in lieu thereof $225,000. Effective January 1, 1976 the $225,000 was stricken and replaced by $200,000. Effective January 1, 1977 the special dollar amount exemption was deleted altogether.

*Phillips, Inc. v. Walling, id.* at 496–98, 65 S.Ct. 807; *Fred Wolferman, Inc. v. Gustafson,* 169 F.2d 759, 762–63 (8th Cir.1948); *Shultz v. Adair's Cafeterias, Inc.,* 420 F.2d 390, 394–95 (10th Cir.1969); *Mitchell v. Sunshine Dept. Stores,* 292 F.2d 645, 647 (5th Cir.1961); *Armstrong Co. v. Walling,* 161 F.2d 515, 516–17 (1st Cir.1947); *Walling v. Goldblatt Bros., Inc.,* 152 F.2d 475, 478 (7th Cir.), *cert. denied,* 328 U.S. 854, 66 S.Ct. 1344, 90 L.Ed. 1627 (1945).

■ The case now before us is very similar on its facts to *Fred Wolferman, Inc. v. Gustafson, supra.* In *Wolferman,* the business concern in question was a candy kitchen producing food products for sale in the owner's four retail stores. One of those four stores was located in the same building which housed the candy kitchen. After holding that the manufacturing employees were not "engaged" in retail operations within the contemplation of the exemption, we went on to state that

> * * * in serving as a production agency for the employer's other stores, the candy kitchen was in any event more than simply a component in the operation of the retail establishment in which it was located. And within the purview of the Act, establishment componency could hardly be claimed in the other stores, with which the candy kitchen lacked physical and operational integration. Each of these aspects would alone be sufficient to make the exemption of section 13(a)(2) inapplicable to its activities.

169 F.2d at 762.

It is clear that under the principles we set forth in *Wolferman* appellants' bakery is not a retail establishment within the meaning of § 13(a)(2).

Appellants contend that § 13(a)(4) of the Act, which was added in 1949, requires a different conclusion. In support of their argument, they cite a portion of the legislative history of § 13(a)(4), which reads in pertinent part as follows:

> * * * An establishment will be exempt under this provision of the conference bill if it meets the following six tests: * * *
>
> 6. The goods which the exempt establishment makes or processes must be made or processed at the establishment which sells the goods. This test will be met despite the fact that there is a physical dividing line between the manufacturing portion of an establishment and the selling portion such as a partition wall, etc. For example, a bakery will meet the test even though it bakes its bread and pastries in a back room and sells them in a front room of its establishment.
>
> This exemption will apply typically to bakery establishments which bake the breads and pastries which they sell * *.

House Managers' Statement, Conference Report No. 1453, 81st Cong., 1st Sess., October 17, 1949. Reprinted in 1949 U.S. Code Cong.Serv. at 2267.[3]

Appellants argue that

> Neither § 13(a)(4) nor the House Managers' Statement, *supra,* specifically requires that 100% of the *production* of the facility or establishment be sold at that establishment, but rather that 100% of the *sales* at such establishment must also be produced at such establishment. That is precisely the case here.

We disagree with appellants' interpretation of the significance of this portion of the House Managers' Statement. Appellants ignore the fact that the above cited portion of the legislative history is applicable only to an establishment which under § 13(a)(2) qualifies as a retail establishment. As we stated above, the bakery does not so qualify.

We find nothing in the legislative history of § 13(a)(4) or the other amendments to the Act to indicate that Congress intended to alter the interpretation the courts, including this court in *Wolferman,* have given

---

**3.** Because of our disposition of this appeal, we need not consider whether the bakery opera-

tion fulfills the other five requirements set forth in the Managers' Statement.

to the term "retail establishment" as it has been applied to operations such as the bakery in question.[4]  Here a maximum of 19.1% of the bakery's output per month was sold through the retail outlet on the premises.  This small amount of retail sales is insufficient to transform what is very analogous to a wholesale operation into a retail establishment. *Cf. A. H. Phillips, Inc. v. Walling, supra,* 324 U.S. at 494–96, 65 S.Ct.

807; *Shultz v. Adair's Cafeterias, Inc., supra,* 420 F.2d at 395.

The judgment of the district court is affirmed.

---

4.  Section 13(a)(2) of the Act was also amended in 1949 to include the definition of "retail establishment" which is a part of that section today.  The purpose of the amendment was "to obviate the sweeping ruling of the Administrator and the courts that no sale of goods or services for business use is retail."  House Managers' Statement, Conference Report No. 1453, 81st Cong., 1st Sess., October 17, 1949. Reprinted in 1949 U.S. Code Cong.Serv. at 2264.